UNITED STATES of America,
Plaintiff–Appellee,

v.

Bruce Wayne PETERS,
Defendant–Appellant.

No. 90–10495.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 7, 1991.

Decided July 2, 1991.

Rustam A. Barbee, Asst. Federal Public Defender, Honolulu, Hawaii, for defendant-appellant.

Marshall H. Silverberg, Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff-appellee.

Before SCHROEDER, FLETCHER and FERGUSON, Circuit Judges.

FLETCHER, Circuit Judge:

Bruce Wayne Peters appeals his conviction for assaulting an officer of the United States in violation of 18 U.S.C. § 111 (1969 & Supp.1991). Peters contends that he was denied his sixth amendment rights by the district court's exclusion of his expert witness as a sanction for defense counsel's asserted violation of discovery rules. We hold that no discovery violation occurred and remand to the district court for further proceedings.

## BACKGROUND

Peters was charged with assaulting United States park ranger Ralph Clyne, who had stopped him in Hawaii Volcanoes National Park because Peters was driving erratically. The charges stemmed from a scuffle that ensued when Clyne attempted to remove a cooler containing beer from the back of Peters' truck for possible use as evidence to substantiate charges of driving while intoxicated. At trial, Clyne contended that during the scuffle Peters hit him several times, pushed him onto the ground and banged his head against the ground, attempted to grab his gun, and tried to strangle him. Peters contended that when he moved toward Clyne, Clyne backed away and tripped over the ice cooler which Clyne had placed behind him.

At the time the government rested its case, it asked the court to order defense counsel to disclose the name of his witnesses. On prompting by the judge, the defense counsel revealed for the first time that he intended to call Dr. Terence Allen, a forensic pathologist, who would testify as to the lack of apparent injuries on Clyne based on his examination of photographs of Clyne taken shortly after the alleged assault and a review of Clyne's medical records. It became clear from a later offer of proof that defense counsel intended to use Allen's testimony to suggest that Clyne could not have experienced the assault to which he had testified without incurring particular injuries that Clyne had not incurred; the defense hoped thereby to impeach Clyne's credibility and undercut his contention that Peters had assaulted him.

On motion from the government, the district judge found that defense counsel's

failure to inform the government of Allen's employment as an expert for the defense and of the results of his examination of photographs of Clyne violated Hawaii Local Rule 345–1(b). According to the district court, while Fed.R.Crim.P. 16 might not be broad enough to require disclosure of the expert's opinion, the language of Rule 345–1(b) gave it a broader scope that would require such disclosure. The court excluded defendant's expert witness as a sanction for violating the local rule.

## DISCUSSION

■■■ On appeal, Peters contends that his counsel's failure to disclose the expert's opinion to the government did not violate either federal or local discovery rules. Accordingly, Peters asserts, the district court erred in excluding his expert witness from the trial. We review the interpretation of a discovery rule's meaning de novo. *United States v. Iglesias*, 881 F.2d 1519, 1523 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1154, 107 L.Ed.2d 1057 (1990); *United States v. Schwartz*, 857 F.2d 655, 657–58 (9th Cir.1988). Where a discovery rule has been violated, we review the propriety of excluding evidence as a sanction for abuse of discretion. *Iglesias*, 881 F.2d at 1523; *Schwartz*, 857 F.2d at 658.

### I. *The Sixth Amendment Compulsory Process Clause*

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor." The Supreme Court has held that this right to compulsory process includes "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). According to the Court, "[t]his right is a fundamental element of due process of law." *Id.*

The defendant's right to offer the testimony of witnesses is not unbounded, however. In *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), the Supreme Court upheld the trial court's exclusion of a witness as a sanction for defense counsel's deliberately failing to identify the witness prior to trial, as required by local discovery rules. The Court rested its decision on the determination that the compulsory process clause did not absolutely bar the preclusion of the testimony. In the Court's words:

> The principle that undergirds the defendant's right to present exculpatory evidence is also the source of essential limitations on the right. The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case. The trial process would be a shambles if either party had an absolute right to control the time and content of his witnesses' testimony.... The State's interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, though not always inflexible, rules relating to the identification and presentation of evidence.

*Id.* at 410–11, 108 S.Ct. at 653. While recognizing that less drastic remedies than exclusion were available as sanctions, the Court held that if the explanation for a party's failure to comply with a discovery rule "reveals that the omission was willful and motivated by a desire to obtain a tactical advantage," it would be "entirely consistent with the purposes of the Compulsory Process Clause simply to exclude the witness' testimony." *Id.* at 415, 108 S.Ct. at 655.

### A. *Scope of Fed.R.Crim.P. 16(b) and Hawaii Local Rule 345–1(b)*

■■■ Peters argues that *Taylor* is inapplicable to the case at bar because his counsel committed no willful violation of any discovery rule. The government concedes that it never sought an order for an ex-

change of witness lists prior to trial, nor was there any agreement between counsel regarding the exchange of such lists. Instead, it contends that defense counsel violated both Fed.R.Crim.P. 16(b), and its local counterpart, Hawaii Local Rule 345–1(b), by his failure to disclose the conclusions Dr. Allen had reached. Defendant disputes this contention: he argues that because Dr. Allen made no written findings of his review of the photographs or the medical records and because his review of Clyne's photographs and medical records did not constitute a physical examination, neither rule is applicable in this case.

This circuit has not previously considered whether either Fed.R.Crim.P. 16 or Hawaii Local Rule 345–1(b) require disclosure of an expert's opinion that has not been recorded in any manner. On consideration, however, we believe that the plain language of both rules precludes their application in such circumstances.

The federal and local rules are fairly similar in wording. Fed.R.Crim.P. 16(b)(1)(B) provides in pertinent part:

> [T]he defendant ... shall permit the government to inspect and copy or photograph any results or reports of physical and mental examinations and of scientific tests or experiments made in connection with the particular case, ... within the possession or control of the defendant, which the defendant intends to introduce as evidence in chief at the trial or which were prepared by a witness whom the defendant intends to call at the trial when the results or reports relate to that witness' testimony.

Hawaii Local Rule 345–1(b) provides:

> The defendant shall (1) inform the government if any of the following exists, and (2) shall permit the government to inspect and copy or photograph the following:
>
> .    .    .    .    .

2. Any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of the defendant, which the defendant intends to introduce as evidence in chief at the trial. . . .

While the language "results or reports" which appears in both rules arguably could apply to an expert's opinion that has not been recorded in some tangible medium, other language in both rules clearly demonstrates that the rules refer only to information recorded in some tangible form. Specifically, both rules are phrased in terms of inspecting and copying or photographing material covered by the rule; such language clearly cannot pertain to oral information. The fact that items listed in other sections of Rule 16(b) and Local Rule 345–1(b), for which the rules require inspection and copying or photographing, are all indisputably information contained in some tangible form confirms this impression.[1] *See United States v. Shue*, 766 F.2d 1122, 1135 (7th Cir.1985) ("[T]he language of Rule 16(a)(1)(D) suggests that it refers only to written reports."); *United States v. Johnson*, 713 F.2d 654, 659 (11th Cir.1983) ("[A]ppellants complain of the conduct of the government in calling an expert to testify without prior notification. . . . In criminal cases, the government must supply, upon the defendant's request, the results or reports of physical or mental examinations. *See* Fed.R.Crim.P. 16(a)(1)(D). However, no such reports were made in this case.").

The government argues that even if we find that Fed.R.Crim.P. 16(b) does not require disclosure of the expert's opinion, we should still find that Local Rule 345–1(b) requires such disclosure. The government bases this argument on the local rule's use of the word "inform," which is not present

---

**1.** While Rule 345–1(b) refers to one situation in which a physical document might not exist, in that case it explicitly requires that a physical document be created. Specifically, when the defendant wishes to rely on the insanity defense or to introduce evidence of a mental defect, subsection (b)(3) of the rule specifically directs

that the defendant "give written notice thereof to the government and file a copy of such notice with the clerk." It therefore suggests that if the framers of the rule intended disclosure to be made of other non-recorded items, they would have explicitly so stated.

in the federal rule, in addition to the "inspect and copy or photograph" language. The inclusion of the term "inform," the government contends, demonstrates that the rule is intended to include discovery of a broader category of information than tangible information which can be inspected and copied or photographed.

The structure of Local Rule 345–1(b) belies the government's contention, however. That rule states that "[t]he defendant shall ... inform the government if any of the following exists, *and* ... permit the government to inspect and copy or photograph the following" (emphasis added). By using the conjunction "and," the language indicates that everything of which the government should be informed is capable of inspection and copying, or photographing, and is therefore a physical item.

■ Even if the expert witness' findings had been recorded in some manner, we do not believe that disclosure would be required pursuant to Fed.R.Crim.P. 18 or Local Rule 345–1(b). While the government contends that the expert's review of the photographs constitutes a "physical examination" within the meaning of the rules, we believe that the plain meaning of the term "physical examination" requires more than the mere inspection of photographs. To reach any other conclusion, as defendant notes, would impose notice requirements for all witnesses who merely view photographs prior to their court testimony. We do not read the rules so broadly.

**B.** *Exclusion in the Absence of Discovery Rule Violations*

■ The government argues that even if defendant's attorney did not commit a clear-cut violation of any discovery rule, the district court properly excluded the witness because defense counsel deliberately failed to divulge the existence of the expert witness in order to secure the defendant an unfair advantage at trial. Specifically, the government asserts that, after agreeing to time restrictions imposed due to the district court's schedule, defense counsel deliberately withheld the fact of the existence of the expert until the eleventh hour in order

to impede the government's ability to find an appropriate rebuttal witness within the time period set for trial. The Supreme Court has emphasized that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." *Taylor,* 484 U.S. at 408, 108 S.Ct. at 652. For this reason, the Court has upheld the drastic remedy of excluding a witness only in cases involving "willful and blatant" discovery violations. *Taylor,* 484 U.S. at 416, 108 S.Ct. at 656. Here, no willful and blatant discovery violations occurred. Accordingly, application of the exclusionary sanction is impermissible. *See United States v. Schwartz,* 857 F.2d 655, 658–59 (9th Cir.1988) ("In the absence of a specific constitutional, statutory or other violation warranting the imposition of the exclusionary sanction, and subject also to the rules regulating admissibility, the government is entitled to offer its best evidence to the court and the jury."); *cf. Chappee v. Vose,* 843 F.2d 25, 30 (1st Cir. 1988) (exclusion of witness appropriate where violation was "lurid and unequivocal, and its genesis was inexcusably deliberate").

**II.** *Harmless Error Analysis*

■ The government also argues that any error committed by the district court in excluding the expert witness should be deemed harmless. We disagree. The only two eyewitnesses to Clyne's alleged assault were the two participants, Clyne and Peters, who gave vastly different accounts of the event at trial. Furthermore, the defense produced bystanders who observed events that occurred immediately after the assault; their accounts somewhat undercut Clyne's version of the events that occurred that day. Given that the prosecution's case rested on Clyne's credibility, that the defense to some extent managed to chip this credibility away, and that the jury deliberated on the case for two days, we are not convinced that "the prejudice resulting from the error was more probably than not harmless." *United States v. Barrett,* 703 F.2d 1076, 1082 (9th Cir.1983).

III. *Admissibility of Dr. Allen's Testimony as Expert Testimony*

The government also argues that this court should exclude Dr. Allen's testimony on the ground that it is not an appropriate subject of expert testimony pursuant to Fed.R.Ev. 702. According to the government, Dr. Allen's testimony would have been either irrelevant because Clyne should have received similar injuries in both the defense's and prosecution's versions of events or impinged on the jury's function because the jury was in as good a position as Dr. Allen to decide whether the injuries received were consistent with each party's story. The government also raises questions concerning Dr. Allen's expert qualifications.

"The admissibility or exclusion of expert testimony is within the discretion of the trial court, and is reversible only for abuse of discretion or manifest error." *United States v. Arvin*, 900 F.2d 1385, 1388–89 (9th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 672, 112 L.Ed.2d 664 (1991). Because the district court improperly excluded Dr. Allen's testimony on the basis of asserted discovery violations, it never exercised its discretion concerning admission of the expert testimony. Accordingly, without offering any opinion regarding whether Dr. Allen's testimony should properly have been admitted pursuant to Fed.R.Ev. 702, we remand to the district court for a determination of that issue. If the district court determines that the expert testimony should properly have been admitted, we direct the court to order a new trial. Because Peters is currently serving his 18–month sentence, a decision on the issue of the admissibility of the expert testimony should be reached promptly or, alternatively, the district court should order Peters released on bail pending that determination.

The mandate shall issue forthwith. The district court shall determine admissibility or release the defendant on bail within twenty-one days of issuance of the mandate. In the event a new trial is ordered, the defendant shall be released on bail pending retrial. The district court may set such terms as may be required to assure attendance at trial. This panel will retain jurisdiction of any future appeals.

REMANDED.